(134 So. 627)

## CITY OF FLORALA et al. v. MATTHEWS.

### 4 Div. 552.

Supreme Court of Alabama.

May 14, 1931.

**32**

F. J. Mizell, Jr., of Florala, for appellants.

A. R. Powell, of Andalusia, for appellee.

SAYRE, J.

The First National Bank of Florala became insolvent early in January of the current year and was placed in the hands of a receiver appointed by the Comptroller of the Currency. At that time the city of Florala was indebted to the bank in the sum of $7,-500 due on open account, and the city had on deposit with the bank several separate sums to the credit of several different accounts as follows: (1) A balance of a fund derived from the sale of bonds of the municipality issued and sold for the purpose of purchasing and improving public school property; (2) a sinking fund derived from the operation of its water works and by resolution of the city council set apart to be used for the retirements of its water works bonds; (3) a fund known as series D bond funds and series F of a like fund. These last-mentioned funds D and F were made up from moneys set apart and appropriated for the purpose of paying the cost of certain assessments against property abutting upon streets which had been paved of which cost the city proposed to repay, as we understand from the record, 25 per cent. Defendants, the city and its authorities, have entered into agreement with the receiver whereby the city is to receive credit upon its general indebtedness to the bank for the full face value of the several special funds, such special funds to be replaced from time to time in accordance with the terms of a resolution to be passed by the city council and approved by the mayor—all of whom are made parties to the bill—by the deposit of "various sums of money to the credit of the accounts herein involved," and by debiting "said account or accounts which receive such credits with such sum or sums as may thus be deposited."

Section 3963 of the Code provides: "Any officer or agent of any county or municipality who shall use, direct, order, or vote for the use of any public money collected for any special public purpose in any way other than for the purpose or purposes for which such money was collected, or who shall use, direct, order, or vote for the use of the proceeds of any county or municipal bonds sold for any purpose other than the use for which said bonds were sold, shall be guilty of a misdemeanor, and, upon conviction, shall be fined," etc.

The question which the parties would have decided by appellee's petition for the writ of injunction is whether the proposed action on the part of the mayor and city council would violate the section of the Code quoted just above.

The sum of the argument in favor of the proposed action and against the issue of the writ, prayed for by a citizen and taxpayer, appears to be that the proposed action of the municipal authorities would ultimately operate to the benefit of the financial interest of the city. As the matter now appears, if the writ be not granted, the municipality will be entitled to participate in dividends to be declared on its several deposits, such dividends as the funds of an insolvent bank may provide, and, on the other hand, will be required to pay in full its obligation to the bank. Or, to state the matter in different form, the municipal authorities propose to use the special funds for general purposes. The proposed arrangement may be considered as beneficial to the city upon the whole, but there will be the risk, incident to the administration of every municipal government, that funds once taken from the municipal treasury—and the bank, or its receiver, holds the funds as the depositary of the city, for safe-keeping—may not be returned thereto, or, rather, to the special funds from which it is proposed to take them, and the purpose of the statute, quoted above, is to relieve the municipality, i. e., the beneficiaries of its government, of the risk incident to the use of any fund devoted by law to special uses for other and different uses. The section of the Code, quoted above, prohibits, under criminal penalties, the use of any public money collected for any special public purpose in any way other than the purpose or purposes for which such money was collected, and for us that is an end of the inquiry. The policy of the statute is fixed by the Legislature, and it is not for the court to change it to meet an emergency in which, it may be, the statute will not work for the best interest of the public it is intended to protect.

What has been said applies so far as concerns the proceeds of school bonds. For aught appearing, the funds derived from the operation of waterworks and from moneys set apart for refunding to property owners a part of the expense of paving abutting streets were not collected for any designated public purpose, but were subject to the control of the municipal authorities who were at liberty to provide and preserve such funds as they saw fit.

The decree is affirmed in part and reversed in part. The costs will be paid by the city for the information and protection of which the proceeding was set on foot.

Affirmed in part, reversed in part and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.